IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF
PENNSYLVANIA

| | | |
|---|---|---|
| DONNA DAVIS, | : | |
| PLAINTIFF, | : | CIVIL ACTION |
| v. | : | |
| UNITED STATES OF AMERICA, | : | NO. 22–2982 |
| DEFENDANT/THIRD-PARTY PLAINTIFF, | : | |
| v. | : | |
| LANA P. HENRY, M.D., *et al.*, | : | |
| THIRD-PARTY DEFENDANTS. | : | |

## MEMORANDUM

**Perez, J.**                                                                                                                      **December 30, 2024**

*Pro se* plaintiff Donna Davis ("Plaintiff") brings this medical malpractice action under the Federal Tort Claims Act ("FTCA") against Defendant United States of America ("Defendant" or "United States"). Plaintiff is asserting a professional negligence claim against Dr. Jessica Williams and Community Health and Dental Care ("CHDC")[1] for their failure to timely diagnosis Plaintiff's breast cancer. Defendant moved for summary judgment and Plaintiff failed to respond. Defendant argues that Plaintiff has failed to establish her tort claim for medical negligence regarding the

---

[1] CHDC is a federally-funded health care center that provides medical services, including obstetric and gynecology exams. On September 15, 2022, this Court granted Defendant's motion to dismiss Dr. Williams and CHDC as defendants and to substitute the United States as the sole federal defendant under the Federally Supported Health Centers Assistance Act "FSHCAA" (42 U.S.C. § 233), because Dr. Williams and CHDC are deemed employees of the Public Health Service as relevant to the claims asserted against them in the Complaint. *See* ECF 11. Pursuant to FSHCAA, the remedy against the United States provided by the FTCA (28 U.S.C. §§ 1346(b) and 2672) is the exclusive remedy for any damage for personal injury resulting from the performance of medical or related functions by employees of the Public Health Service while acting within the scope of their office or employment. *See* 42 U.S.C. § 233(a). FTCA is the source of federal courts' jurisdiction to hear tort claims made against the United States that meet various criteria: "the district courts . . . shall have exclusive jurisdiction of civil actions on claims against the United States." 28 U.S.C. § 1346(b)(1).

treatment provided by CHDC medical staff because she has not presented the testimony of a medical expert, as required under Pennsylvania law. This Court agrees and finds that Defendant has produced uncontroverted evidence that entitles it to judgment as a matter of law.

I.     BACKGROUND[2]

In 2018, at age 37, Plaintiff presented to CHDC complaining of lumps in her breast. ECF No. 81-7 at 6. Dr. Jessica Williams, a board-certified doctor specializing in obstetrics and gynecology, performed a breast exam on Plaintiff, detecting two masses in her right breast. *Id.* Dr. Williams ordered a diagnostic mammogram and ultrasound and advised Plaintiff to return for a full annual examination. *Id.* Plaintiff had imaging performed at Bryn Mawr Hospital on December 6, 2018. The radiology records[3] indicated there were "no suspicious masses . . . or abnormalities." *Id.* Plaintiff returned for her annual exam with Dr. Williams on December 19, 2018. *Id*; ECF No. 1 at ¶ 14. Based on the imaging results, the radiologist's findings, and her own evaluation, Dr. Williams suspected "fibrocystic changes" could be the cause of the lumps, but nevertheless suggested Plaintiff could visit with a breast specialist if she desired. *Id.* Approximately a year later, Plaintiff detected growth in the lump and went to Phoenixville Hospital for imaging and a biopsy. ECF No. 1 at ¶¶ 17-18. On January 21, 2020, Plaintiff was diagnosed with Stage III breast cancer. *Id.* at ¶ 20.

---

[2] There appears to be very little factual dispute between the Parties regarding the medical care Plaintiff sought and received leading up to her breast cancer diagnosis. The facts in this section are drawn from Plaintiff's Complaint (ECF No. 1), Defendant's expert report (ECF No. 81-7), and Defendant's Statement of Undisputed Facts (ECF No. 81-2), to which Plaintiff never responded or affirmatively disputed.

[3] Defendant has asserted third-party professional liability claims against Dr. Lana P. Henry, M.D., Radiology Associates of the Main Line, P.C., Main Line Hospitals, Inc., and Main Line Health, Inc. (collectively "Third-Party Defendants"), alleging that Dr. Henry's interpretation and report of Plaintiff's radiology imaging was negligent and deviated from the standard of care, resulting in no referrals to appropriate specialists for additional examinations or studies. *See* ECF No. 18. Plaintiff never initiated an action related to the imaging performed and interpreted by Third Party Defendants.

When Plaintiff initiated this action on July 29, 2022, she was represented by counsel. *See* ECF No. 1. However, on August 18, 2023, this Court granted her attorney's motion to withdraw following a hearing, and Plaintiff has proceeded *pro se* ever since. ECF No. 48. The matter was stayed from July 19, 2023 through April 26, 2024 to allow Plaintiff the opportunity to find new counsel, but she was unsuccessful in her efforts. ECF Nos. 48 and 76. The Court granted Plaintiff access to ECF, permitting her to electronically file and receive filings from the docket. ECF No. 80. Plaintiff confirmed at her deposition that she electronically receives notice and copies of the other parties' and the Court's filings in this case. ECF No. 81-6 at 210: 13-20.

Plaintiff has made some efforts to prosecute her case *pro se* but has never responded to Defendant's motion for summary judgment, nor has she provided an expert report in support of her claims of medical negligence or to rebut the findings in Defendant's expert report.

## II.     STANDARD OF REVIEW

"The underlying purpose of summary judgment is to avoid a pointless trial in cases where it is unnecessary and would only cause delay and expense." *Walden v. Saint Gobain Corp.*, 323 F. Supp. 2d 637, 641 (E.D. Pa. 2004) (citing *Goodman v. Mead Johnson & Co.*, 534 F.2d 566, 573 (3d Cir. 1976)). A court will award summary judgment on a claim or part of a claim where there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it could affect the outcome of the suit, given the applicable substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

A dispute is "genuine" if the evidence presented "is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* In evaluating a summary judgment motion, a court "must view the facts in the light most favorable to the non-moving party," and make every reasonable inference in that party's favor. *Hugh v. Butler Cty. Family YMCA*, 418 F.3d 265, 267 (3d Cir. 2005)

(citation omitted). Further, a court may not weigh the evidence or make credibility determinations. *Boyle v. Cty. of Allegheny*, 139 F.3d 386, 393 (3d Cir. 1998).

Nevertheless, the party opposing summary judgment must support each essential element of the opposition with concrete evidence in the record. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986) (emphasis added). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249–50 (internal citations omitted). Therefore, if, after making all reasonable inferences in favor of the non-moving party, the court determines that there is no genuine dispute as to any material fact, summary judgment is appropriate. *Wisniewski v. Johns–Manville Corp.*, 812 F.2d 81, 83 (3d Cir. 1987).

"When a summary judgment motion is uncontested, the non-responding party does not lose the summary judgment motion by default." *Hitchens v. Cty. of Montgomery*, 98 F. App'x 106, 110 (3d Cir. 2004); *see also Nunez v. Heere*, No. 18-4493, 2020 WL 587021, at *2 (E.D. Pa. Feb. 6, 2020). "By failing to respond, however, 'the nonmoving party waives the right to respond to or to controvert the facts asserted in the summary judgment motion.'" *B & B Fin. Servs. LLC v. Kallock*, No. 05-1277, 2006 WL 2869529, at *1 (E.D. Pa. Oct. 4, 2006) (quoting *Reynolds v. Rick's Mushroom Serv.*, 246 F.Supp.2d 449, 453 (E.D. Pa. 2003)). Where, as here, the moving party does not bear the burden of proof on the relevant issues, the court must determine whether deficiencies in the nonmoving party's "evidence designated in or in connection with the motion entitle the moving party to judgment as a matter of law." *Anchorage Assocs. v. V.I. Bd. of Tax Review*, 922 F.2d 168, 175 (3d Cir. 1990) (citation omitted).

### III.  DISCUSSION

Although Plaintiff bears the burden of proof on her claims, she has presented no evidence, aside perhaps from her own deposition, to satisfy the elements of medical negligence. Plaintiff's

allegations in the Complaint are entitled no weight on summary judgment because "summary judgment is essentially 'put up or shut up' time for the non-moving party: the non-moving party must rebut the motion with facts in the record and cannot rest solely on assertions made in the pleadings, legal memoranda, or oral argument." *Berckeley Inv. Group, Ltd. v. Colkitt*, 455 F.3d 195, 201 (3d Cir. 2006) (citing *Jersey Cent. Power & Light Co. v. Lacey Twp.*, 772 F.2d 1103, 1109–10 (3d Cir. 1985)); *see also Hawkins v. Fed. Nat. Mortg. Ass'n*, No. 2:13-6068, 2015 WL 356932, at *2 (E.D. Pa. Jan. 28, 2015).

The Federal Tort Claims Act provides that "the United States shall be liable, respecting the provisions of this title relating to tort claims, in the same manner and to the same extent as a private individual under like circumstances." 28 U.S.C. § 2674. The substantive state law where the tortious conduct occurs governs a FTCA claim, *see Sosa v. Alvarez-Machain*, 542 U.S. 692, 700 (2004), so Pennsylvania law applies.

Under Pennsylvania law, medical negligence, or medical malpractice, is defined as "the unwarranted departure from generally accepted standards of medical practice resulting in injury to a patient, including all liability-producing conduct arising from the rendition of professional medical services." *Toogood v. Owen J. Rogal, D.D.S., P.C.,* 824 A.2d 1140, 1145 (2003) (citing *Hodgson v. Bigelow,* 7 A.2d 338 (1939)). The existence of an injury, by itself, does not prove a doctor's negligence. *Mitchell v. Shikora,* 209 A.3d 307, 315 (2019) (citations omitted).

To prevail on her medical malpractice claim, Plaintiff must establish: (1) a duty owed by the physician; (2) a breach of that duty; (3) that the breach proximately caused the harm; and (4) that the damages directly result from the harm. *Quinby v. Plumsteadville Family Practice, Inc.,* 907 A.2d 1061, 1070 (2006) (quoting *Hightower–Warren v. Silk,* 698 A.2d 52, 54 (1997)). In addition, "as a general rule, a plaintiff has the burden of presenting expert opinions that the alleged

act or omission of the defendant physician or hospital personnel fell below the appropriate standard of care in the community, and that the negligent conduct caused the injuries for which recovery is sought." *Simpson v. Federal Bureau of Prisons,* Civ. No. 2–2313, 2005 WL 2387631 at * 5 (M.D. Pa. Sept. 28, 2005) (citing *Grossman v. Barke,* 868 A.2d 561, 566–67 (Pa. Super. Ct. 2005)). "Under Pennsylvania law, a plaintiff must have expert testimony in all but the most simple cases on the issue of causation-that the negligence caused the injuries." *Wooding v. United States,* No. CIV.A. 05-1681, 2007 WL 951494, at *5 (W.D. Pa. Mar. 27, 2007); *see also Simpson,* 2005 WL 2387631 at * 5 (quoting *Hightower–Warren v. Silk,* 698 A.2d 52, 54 n. 1 (Pa. 1997)).

The Pennsylvania Supreme Court examined the general requirement of expert testimony for medical negligence cases in *Toogood v. Rogal,* 824 A.2d 1140 (Pa. 2003):

> Courts sitting in medical malpractice cases require detailed expert testimony because a jury of laypersons generally lacks the knowledge to determine the factual issues of medical causation; the degree of skill, knowledge, and experience required of the physician; and the breach of the medical standard of care. In contrast, plaintiffs in res ipsa loquitur cases rely on the jury to fill in the missing pieces of causation and negligence, inherent in their cases, with the jury's common experience. Determining whether there was a breach of duty, however, involves a two-step process: the court must first determine the standard of care; it then must examine whether the defendant's conduct measured up to that standard. Not only does the plaintiff have the burden of proving that the defendant did not possess and employ the required skill and knowledge, or did not exercise the care and judgment of a reasonable professional, he or she must also prove that the injury was caused by the failure to employ that requisite skill and knowledge. We have previously concluded that this must be accomplished with expert medical testimony presented at trial by doctors testifying as expert witnesses.

*Id.* at 1149. In this case, there is simply no evidence presented by Plaintiff that Dr. Williams or CHDC breached their duty regarding the medical care Plaintiff received. Expert medical testimony is required to show that Defendant failed to employ the required skill and knowledge during her care with CHDC. Without an expert, this Court cannot find that there is a factual dispute regarding

whether Dr. Williams exercised the care and judgment of a reasonable professional. Further, Plaintiff cannot demonstrate that a breach of duty caused her injuries without testimony from a medical expert. Plaintiff has offered no evidence to prove or disprove the applicable standard of care, the deviation from that standard, causation, and the extent of her injury.

Defendant has presented undisputed evidence through an expert report submitted by Daniel Small, M.D., F.A.C.O.G., a licensed physician board-certified in obstetrics and gynecology, finding that CHDC and Dr. Williams's treatment of Plaintiff did not breach any standard of care. ECF No 81-7 at 6-8. Small concluded that "[w]ith the presence of an identifiable mass in November of 2018, the standard of care required diagnostic imaging, just as Dr. Williams ordered." *Id.* at 6. Dr. Williams' subsequent evaluation of Plaintiff coupled with the radiology results did not require that a biopsy be performed at that time under the requisite standard of care. *Id.*

Defendant's expert report goes on to say that gynecologists, like Dr. Williams, "rely on a radiologist's expertise in reading [imaging results] in making their management decisions. Gynecologists do not have the training to read such films themselves. The standard of care clearly does not require gynecologists to make independent reading of films already evaluated by an expert radiologist." Plaintiff has not asserted or attempted to assert any malpractice claims against Third-Party Defendants related to the radiological imaging and resulting recommendation to Dr. Williams. This Court agrees with Defendant's contention that its claims against Third-Party Defendants are rendered moot upon the entry of summary judgment against Plaintiff. ECF No. 81 at 16.

## IV. CONCLUSION

Without a medical expert, Plaintiff cannot create a genuine issue of material fact for trial. Because Plaintiff has not presented evidence that would satisfy her negligence claim, summary judgment is warranted. This matter is therefore dismissed with prejudice with regard to Defendant

United States of America and without prejudice with regard to Defendant United States of America's claims against Third-Party Defendants.